IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| COMBINED TRANSPORT, INC., a/s/o AMY'S KITCHEN, INC., <br><br>Plaintiff, <br><br> v. <br><br> C.H. ROBINSON COMPANY, INC.; C.H. ROBINSON FREIGHT SERVICES, LTD.; and C.H. ROBINSON OPERATIONS, INC., <br><br>Defendants. | Civil Action No. **3:24-CV-2797-L** |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants C.H. Robinson Company, Inc., C.H. Robinson Freight Services, Ltd., and C.H. Robinson Operations, Inc.'s (collectively, "CHR") Motion for Summary Judgment ("Motion") (Doc. 18), filed July 21, 2025. Upon review, and for the reasons herein stated, the court **denies without prejudice** the Motion.

### I. Background

On September 20, 2024, Combined Transport, Inc., as subrogee of Amy's Kitchen, Inc., ("Combined Transport"), filed this lawsuit in state court against CHR. Combined Transport alleges it was engaged as an interstate motor carrier by Amy's Kitchen to carry a load of 4,428 units of frozen food product (the "Cargo" or "Product") from Pocatello, Idaho, to a temperature-controlled facility in Fort Worth, Texas. *See* Pl.'s Orig. Pet. (Doc. 1-1). Combined Transport alleges it mistakenly delivered the Cargo to a facility in Dallas, Texas, operated by CHR, that was not temperature-controlled, where the Cargo defrosted and spoiled. *Id.* Combined Transport then reimbursed Amy's Kitchen for the destruction of the Cargo. *Id.* Combined Transport brings a

negligence claim against CHR, alleging improper acceptance of the Cargo and subsequent unreasonable delays leading to its destruction, and damages to Combined Transport in the amount of $85,746.59. *See id.* CHR removed this matter to federal court based on compete diversity of citizenship and that the amount in controversy exceeded $75,000, exclusive of interest and costs. *See* Notice of Removal (Doc. 1).

In its Answer, CHR denies any liability for Combined Transport's alleged damages and asserts, in addition to other affirmative defenses, that, as a motor carrier transporting the Cargo in interstate commerce, Combined Transport had full, indivisible, and nondelegable liability for any damage to the cargo under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, and, as such, it has no right of contribution or indemnity from any third parties, such as CHR, and any cause of action for contribution or indemnity, arising under state common law, is preempted by the provisions of the Carmack Amendment. *See* Ans. ¶ 2 (Doc. 6).[1]

On July 21, 2025, CHR filed its Motion on this basis, contending that Combined Transport "cannot seek contribution or indemnity under Texas or federal common law for its liability for cargo loss and damage under the Carmack Amendment." CHR's Br. in Supp. of Mot. for Summ. J. 16 (Doc. 19). CHR maintains that Combined Transport, as the sole motor carrier for the Cargo, had a "nondelegable duty under the Carmack Amendment to deliver the Cargo to its correct location" and "failed in that duty and is solely liable for the alleged damage to the Cargo." *Id.* at 19. According to CHR, "Combined Transport has no cause of action here against Combined

---

[1] The Carmack Amendment imposes liability on the carrier or carriers that deliver property or provide transportation services "to the person entitled to recover under the receipt or bill of lading." 49 U.S.C § 14706(a)(1). The Carmack Amendment is structured like a strict liability claim—that is, it allows a shipper to collect from a carrier regardless of fault. *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (cleaned up) (citations omitted).

**Memorandum Opinion and Order - Page 2**

Transport" and "summary judgment should be granted in CHR's favor and Combined Transport's Complaint dismissed." *Id.*

In response, Combined Transport contends that CHR's argument that Combined Transport "lacks a valid claim under the Carmack Amendment is misplaced[] and should therefore be disregarded. Combined Transport's cause of action arises out of [CHR's] liability under Texas common law negligence." Pl.'s Resp. Br. 9 (Doc. 22). Combined Transport asserts that CHR, as "property brokers," owed a duty of care "to operate with reasonable care and diligence when arranging transportation." *Id.* at 12. Combined Trasport argues that "[h]ad the CHR Defendants exercised reasonable care, they would have confirmed they should not have accepted the Product, as it was frozen and they did not possess the requisite facilities to accommodate frozen foods." *Id.* at 14. Further, Combined Transport maintains that "[a]s licensed property brokers and operators of the Dallas warehouse, CHR Defendants should have through reasonable inquiry determined that the frozen Product[] should not have been unloaded onto their ambient dry-dock." *Id.* According to Combined Transport, CHR breached its duty of care by "improperly accepting the Product, permitted the Product to spoil and become unusable, resulting in damage to Combined Transport." *Id.* at 8.

In reply, CHR reiterates its contention that Combined Transport, as the sole motor carrier for the Cargo from its point of origin until its point of destination, is strictly liable for any damage to the Cargo under the Carmack Amendment and has no cause of action against it. Reply 1-2 (Doc. 26). CHR also argues that:

> Without adequately rebutting CHR's no-cause-of-action argument in its Motion for Summary Judgment, Combined Transport presses ahead and asserts that a genuine issue of fact exists as to whether CHR was negligent with respect to the Cargo. This argument is outside the scope of the instant Motion: *CHR does not assert herein that Combined Transport has failed to establish facts in support of its cause of action for negligence against CHR.* Rather, CHR raises the more fundamental

> question that Combined Transport lacks any such cause of action against CHR in the first place. Nonetheless, this argument contains several errors that should be addressed.

*Id.* at 2 (emphasis added) (internal citations omitted). At this juncture in its reply brief, CHR, *for the first time*, asserts that "while two of the CHR Defendants are licensed property brokers, CHR was not acting in its capacity as a property broker with respect to the Cargo."[2] CHR further states that there

> is no allegation in the Complaint or elsewhere that CHR had anything to do with arranging the transportation of the Cargo from Idaho to Fort Worth, Texas using the services of Combined Transport as a motor carrier. Instead, the facts alleged demonstrate that CHR was simply operating as a warehouse operator with respect to the Cargo.

*Id.* CHR also maintains, again for the first time, that even if it "had been operating as a property broker, negligence claims against property brokers are preempted by a separate federal statute, the Federal Aviation Administration Authorization Act, 49 U.S.C. § 14501(c)." *Id.* (citations omitted).

## II.     Discussion

As is evident from the court's recitation of the background facts and its summary of the legal briefing pertaining to the Motion, *supra*, the parties have taken a piecemeal and circuitous approach to presenting the salient arguments and evidence to the court, making it impossible for the court to determine whether Combined Transport has raised a genuine dispute of material fact sufficient to withstand CHR's Motion. Not only does Combined Transport give short shrift to CHR's summary judgment arguments premised on the Carmack Amendment, it does not address crucial facts related to Combined Transport's negligence claim until its reply brief. Further, notwithstanding that CHR has raised arguments for the first time in its reply brief, Combined

---

[2] A property broker is a "person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2).

**Memorandum Opinion and Order - Page 4**

Transport did not seek leave to file a surreply. As set forth in its Scheduling Order (Doc. 9) (since vacated), surreplies are highly disfavored and are not to be filed as a routine matter, but the court allows filings beyond this district's Local Civil Rule 7.1 in exceptional or extraordinary circumstances. Here, as the court's summary of the parties' briefing illustrates, a surreply is warranted.

The court is dissatisfied with the parties' piecemeal approach and finds it is not in the interest of judicial economy to proceed with the instant Motion. Further, this approach has caused needless delay. Rather than litigate this action in a piecemeal manner, the court determines that the clearest and most efficient way to proceed is to deny the Motion without prejudice and allow CHR to file a second motion for summary judgment pursuant to this district's Local Civil Rule 56.2(b). The court *admonishes* the parties to address all issues in their respective briefs, rather than present the matters in piecemeal fashion. Also concerning to the court is the parties' reliance on authority outside the Fifth Circuit, which that is not controlling on this court. The only binding authority on this court are cases from the United States Court of Appeals for the Fifth Circuit and the United States Supreme Court. Authority from these court's is notably absent from the parties' briefing.

### III.    Conclusion

For these reasons, the court **denies without prejudice** CHR's Motion for Summary Judgment (Doc. 18). The court allows CHR to file a second motion for summary judgment pursuant to this district's Local Civil Rule 56.2(b). Such motion must be filed **no later than February 2, 2026**, or it will not be considered. The response and reply brief must be filed pursuant to the deadlines set forth in this district's Local Civil Rule 7.1.

Once the court has ruled on the second motion, it will, as necessary, contact the parties and direct them to provide three separate dates in three separate months when they will be available

for trial. The court then will issue an amended scheduling order with new pretrial deadlines and a trial date.

    **It is so ordered** this 12th day of January, 2026.

                                                    Sam A. Lindsay
                                      United States District Judge